**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF OKLAHOMA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-09-172-M |
| BANK OF AMERICA, N.A., and BANC OF AMERICA INVESTMENT SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court are defendants' Motion to Compel Responses to Discovery Requests, the Objection of Non-Parties Tom and Ashley Parrish to Subpoena Duces Tecum and Motion to Quash, the Objection of Non-Parties Tom and Ashley Parrish to Defendants' Second Subpoena and Motion to Quash, plaintiff's Combined Motion to Quash Defendants' Subpoena Duces Tecum and Second Amended Notice of Deposition and Motion for Protective Order, and plaintiff's Combined Motion to Quash Defendants' Subpoena Duces Tecum Served on July 27, 2009 and Motion for Protective Order. These motions have been fully briefed and are now ripe for determination.

I.      Introduction

This case arises out of a personal loan from plaintiff First National Bank of Oklahoma ("FNB") to Thomas W. Parrish and Ashley D. Parrish (the "Loan"). Mr. Parrish was, at all times relevant to the execution and issuance of the loan documents, on the Board of Directors at FNB and served as trustee over several trusts, including the Peggy Joyce Parrish Trust and the Parrish GST Exempt Residuary Trust (the "Trusts"). The Parrishs pledged assets of the Trusts as security for the

Loan, specifically the funds in the Trusts' brokerage accounts at defendant Banc of America Investment Services, Inc. ("BAISI").

As trustee of the Trusts, Mr. Parrish executed two security agreements granting FNB a security interest in each investment account owned by the Trusts.  To perfect its security interest in the investment accounts, FNB requested the execution of two Notice of Pledge and Control Agreements (the "Agreements") by Mr. Parrish as trustee of the Trusts and by BAISI.  Mr. Parrish and BAISI executed the Agreements.  Under the terms of the Agreements, BAISI was not to release or otherwise transfer any of the assets in the two investment accounts without first receiving written consent from FNB.

Subsequently, Mr. Parrish was removed as trustee of the Trusts and was replaced by his brother, Richard C. Parrish.  On or about October 30, 2008, Richard Parrish transferred the assets in the investment accounts from BAISI to the Smith Barney investment firm.  BAISI did not seek, and did not receive, written consent from FNB prior to allowing the assets to be transferred.

Approximately a year after the Loan was issued, the Parrishs defaulted.  FNB has filed the instant action for breach of contract against defendants based upon BAISI's actions in relation to the Agreements and transferring the assets in the investment accounts.  Defendants have asserted numerous affirmative defenses including, but not limited to: (1) that the purported pledges by Mr. Parrish, as trustee, of assets of the Trusts as security for the repayment of personal obligations of the Parrishs were not authorized by either trust and are unenforceable; (2) that the purported pledges by Mr. Parrish, as trustee, of assets of the Trusts as security for the repayment of personal obligations of the Parrishs were fraudulent and void ab initio; (3) that the purported pledges by Mr. Parrish, as trustee, of assets of the Trusts as security for the repayment of personal obligations of the Parrishs

were illegal and void ab initio; and (4) FNB is *in pari dilecto* and has unclean hands as it had reason

to know that the purported pledges by Mr. Parrish, as trustee, of assets of the Trusts as security for

the repayment of personal obligations of the Parrishs were not authorized by either trust, were a

fraud on the Trusts, and were unenforceable.

In order to develop these affirmative defenses, defendants propounded discovery requests

upon FNB and issued various subpoena duces tecum and notices of deposition, which are now the

subject of the various discovery motions filed in this matter.

II.     Discussion

Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part:

> Unless otherwise limited by court order, the scope of discovery is as
> follows: Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense – including the
> existence, description, nature, custody, condition, and location of any
> documents or other tangible things and the identity and location of
> persons who know of any discoverable matter.  For good cause, the
> court may order discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not be admissible
> at the trial if the discovery appears reasonably calculated to lead to
> the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Further, protective orders are governed by Federal Rule of Civil Procedure

26(c).  That rule provides, in pertinent part:

> A party or any person from whom discovery is sought may move for
> a protective order in the court where the action is pending . . . .  The
> court may, for good cause, issue an order to protect a party or person
> from annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following:
>
> *          *          *
>
> (A) forbidding the disclosure or discovery;
>
> *          *          *

3

(D) forbidding inquiry into certain matters, or limiting the scope of
disclosure or discovery to certain matters; . . . .

Fed. R. Civ. P. 26(c)(1).

The party seeking a protective order must show "good cause" for its request. *Id.*; *Am. Benefit Life Ins. Co. v. Ille*, 87 F.R.D. 540, 543 (W.D. Okla. 1978). "'Good cause' within the meaning of Rule 26(c) contemplates a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Am. Benefit*, 87 F.R.D. at 543 (quoting *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)).

A.     Requests for admission

Defendants assert that FNB's responses to Request for Admission Nos. 1 and 3 are evasive and incomplete and move this Court to compel FNB to more completely respond to these requests for admission. Request for Admission No. 1 requests: "Admit that the Loan was a personal loan to benefit Thomas W. Parrish ("Tom Parrish") and Ashley D. Parrish." FNB responded as follows: "Plaintiff admits that the Maker on the Loan was Thomas W. Parrish and Ashley D. Parrish. Plaintiff denies the remaining Request for Admission No. 1." Defendants assert that FNB's response is evasive because FNB, as the lending institution, should know whether the Loan was personal or not. FNB contends that the term "personal loan" is not defined and without a definition it does not know what defendants mean by the term "personal loan." Having carefully reviewed the parties' submissions, the Court finds that FNB's response to Request for Admission No. 1 is appropriate and not evasive, particularly in light of the lack of a definition for the term "personal loan."

Request for Admission No. 3 requests: "Admit that the Loan was not intended to benefit the Trusts." FNB responded as follows: "Plaintiff does not know if the Trusts benefitted directly or indirectly from the Loan proceeds and therefore denies Request for Admissions No. 3." Defendants

4

assert that FNB, as a financial lending institution, should know for what purpose the Loan was made and who would benefit from the Loan and that, therefore, FNB's response is clearly evasive and intended to hide discoverable facts that are relevant to defendants' affirmative defenses.  FNB contends that its response is not evasive in that the Trusts could have benefitted directly or indirectly from the loan proceeds in a number of ways and that it has no knowledge whether the Trusts benefitted or not.  Having carefully reviewed the parties' submissions, the Court finds that FNB's response to Request for Admission No. 3 is not evasive and fully responds to the request.

Accordingly, the Court finds that defendants' motion to compel should be denied as to Request for Admission Nos. 1 and 3.

> B.    Interrogatories
>
> 1.    Interrogatory Nos. 1 and 2

Interrogatory No. 1 and FNB's response provide, as follows:

> INTERROGATORY NO. 1: Identify by name and position each and every current or former FNB officer, director, shareholder, credit officer, loan officer or other employee who has any knowledge related to the Loan or the Collateral, including each person's business and personal relationships with Tom Parrish and Ashley Parrish or any of their business or familial interests.
>
> RESPONSE TO INTERROGATORY NO. 1: Objection. Defendant's Interrogatory No. 1 is overly broad and unduly burdensome.  Without waiving its objection, Plaintiff identifies the following persons known at this time: (i) Mel Martin, President of FNB; (ii) Pat Rooney, CEO and Chairman of the Board of FNB; and (iii) Thomas Parrish, shareholder and former Director of FNB.

Defendants assert that FNB's response to Interrogatory No. 1 fails to identify all persons who had knowledge related to the Loan and fails to identify the relationships between those named and the Parrishs.  FNB contends that its response to Interrogatory No. 1 is a full response because it

identified all "persons known at this time."  FNB further contends that the relationship between the parties is explicit in the answer.  Finally, FNB contends that Interrogatory No. 1 is overly broad and unduly burdensome because the interrogatory is asking for the identification of every current or former employee of FNB who has knowledge related to the Loan.

Having reviewed the parties' submissions, the Court finds that FNB's response to Interrogatory No. 1 is incomplete.  Specifically, the Court finds that the relationship between the parties is not explicit in the answer and that FNB should be compelled to specifically set forth the business and personal relationships each person listed has with the Parrishs or any of their business or familial interests.  Additionally, while the Court agrees that, as written, Interrogatory No. 1 is overly broad, the Court does not believe that it should be narrowed to the extent to which FNB believes.  Specifically, the Court finds that FNB must identify by name and position every current or former FNB officer, director, shareholder, credit officer, loan officer, or other employee who has any knowledge related to the approval of the Loan and/or the use of the Trusts' assets as collateral for the Loan.

Interrogatory No. 2 and FNB's response provide, as follows:

> INTERROGATORY NO. 2: For each person identified in Interrogatory No. 1, identify any and all education and/or training that person has had relating to secured lending, the use of trust properties as collateral, the use of brokerage accounts, including those owned by trust, as collateral and the term "attachment" under Article 9 of the UCC.

> RESPONSE TO INTERROGATORY NO. 2: Objection. Defendant's Interrogatory No. 2 is overly broad and unduly burdensome and seeks information outside the scope of knowledge of the person responding to these Interrogatories.  In addition Defendant's Interrogatory No. 2 seeks a legal opinion from the person responding to these Interrogatories regarding the definition of attachment.  Without waiving its objection, Plaintiff states that Mel

6

> Martin has worked in the commercial and investment banking
> business for 24 years.  He commenced his career as a National Bank
> Examiner.  During his employment as a National Bank Examiner, one
> of his duties was to assess the adequacy of documentation pertaining
> to commercial loans.

Defendants assert that FNB's response to Interrogatory No. 2 fails to identity what training the persons listed in Interrogatory No. 1 have relating to the requested categories in Interrogatory No. 2.  FNB contends that Interrogatory No. 2 is unduly burdensome and overly broad.  Having reviewed the parties' submissions, the Court finds that Interrogatory No. 2 is not unduly burdensome and overly broad.  The Court, therefore, finds that FNB should be compelled to completely respond to this interrogatory.

> 2.      Interrogatory Nos. 3, 8, 9, 10, 11, and 12

Interrogatory No. 3 and FNB's response provide, as follows:

> INTERROGATORY NO. 3: Explain FNB's process for approving
> the Loan, including, but not limited to, when the Loan was approved,
> how the decision was made to accept the Collateral to secure the
> Loan, whether any research or review of the trust documents
> governing Tom Parrish's ability to pledge the Trusts' assets was
> performed, and who made and/or approved the decision to accept the
> Collateral, specifically identify any deviations from FNB's normal
> process that were made in regards to the Loan and Collateral.

> RESPONSE TO INTERROGATORY NO. 3: First, the Loan was
> structured and approved by Mel Martin as the lending officer in
> charge of the loan.  Second, the Loan was reviewed and approved by
> the Loan Committee Officers.  The Loan Committee is chaired by Pat
> Rooney.  Finally the Loan was approved by a majority of the Board
> of Directors.  Tom Parrish was absent from the meeting room at the
> time the Loan was presented, discussed and approved.  Tom Parrish
> abstained from voting to approve or decline the Loan.  Prior to
> approving the Loan, the Trust Agreement of the Parrish GST Exempt
> Residuary Trust and the Trust Agreement for the Peggy Joyce Parrish
> Trust were reviewed by Mel Martin.  After the closing of the Loan,
> the Loan, the security agreements, perfection documents and all other
> supporting loan documents and Loan related documents were

> reviewed by FNB's internal credit administration staff, external loan
> review staff and examination staff from the Comptroller of the
> Currency.   No deficiencies in the collateral documentation were
> identified during any review.   No deviations from FNB's standard
> loan approval process occurred regarding this loan.

Defendants assert that FNB wholly fails to describe what the loan approval process is at FNB, yet asserts that there were no deviations from the process.  FNB contends that it answered the interrogatory fully and completely.  Having carefully reviewed the parties' submissions, the Court finds that FNB fully and completely answered Interrogatory No. 3.

Interrogatory No. 8 and FNB's response provide, as follows:

> INTERROGATORY NO. 8: Identify how FNB's policies and
> procedures on secured lending were applied to this Loan and
> Collateral.

> RESPONSE TO INTERROGATORY NO. 8: Once the Collateral
> was identified, Mel Martin reviewed the Trust Agreement for the
> Parrish GST Exempt Residuary Trust and the Trust Agreement for
> the Peggy Joyce Parrish Trust.  Mel Martin spoke with the Trustee of
> the Parrish GST Exempt Residuary Trust and the Peggy Joyce Parrish
> Trust.  Mel Martin reviewed the statements produced by BAIS stating
> the asset value of the Collateral.   Mel Martin delivered a security
> agreement granting FNB a security interest in and to the Collateral
> which was executed by the Trustee of the Peggy Joyce Parrish Trust
> and the Parrish GST Exempt Residuary Trust.  Mel Martin delivered
> a notice of pledge and control agreement to the Trustee of the Peggy
> Joyce Parrish Trust, the Parrish GST Exempt Residuary Trust and
> BAIS to be executed by the parties.

Defendants assert that FNB failed to identify its policies and procedures on secured lending and explain how such policies and procedures were applied to the Loan.  FNB contends that its response is full and complete.  FNB further states that its response walks defendants step by step through FNB's policies and procedures and that this was done to eliminate the repetitiveness of stating the policies and procedures and then the application of those policies and procedures to the

loan and collateral in question.  Having carefully reviewed the parties' submissions, the Court finds that FNB fully and completely answered Interrogatory No. 8.

Interrogatory No. 9 and FNB's response provide, as follows:

> INTERROGATORY NO. 9: Identify how FNB's policies and procedures related to determining whether the collateral offered to secure a loan would be acceptable were applied to this Loan and Collateral, including the name and title of each person who would have had a role in making the determination regarding the collateral.

> RESPONSE TO INTERROGATORY NO. 9: The Officer determined that the Collateral was inline with FNB's loan policy and inline with the collateral advance rates.  The loan officer was Mel Martin.  Kim Burns, credit administration officer, reviewed the loan post closing for compliance with established policy and procedure.

Defendants assert FNB failed to identify what the "loan policy" is at FNB.  FNB contends that its response is full and complete.  FNB further contends that the interrogatory does not ask it to identify its "loan policy" but asks it to identify "how" its policies and procedures were applied to the Loan and collateral.  Having carefully reviewed the parties' submissions, the Court finds that FNB fully and completely answered Interrogatory No. 9.

Interrogatory No. 10 and FNB's response provide, as follows:

> INTERROGATORY NO. 10: Identify how FNB's policies and procedures related to the use of trust properties as collateral were applied to this Loan and Collateral, including the name and title of each person who would have had a role in evaluating the trust properties at issue.

> RESPONSE TO INTERROGATORY NO. 10: Mel Martin requested and reviewed the Trust Agreements for Parrish GST Exempt Residuary Trust and the Peggy Joyce Parrish Trust.  Mel Martin spoke with the Trustee of the Parrish GST Exempt Residuary Trust and the Peggy Joyce Parrish Trust.  Mel Martin delivered the appropriate documents granting a security interest in and to the Collateral to the Trustee for execution.

9

Defendants assert FNB failed to identify any policy or procedure of FNB, failed to identify what procedure it applied in determining the use of trust properties as collateral, and failed to identify each person who had a role in evaluating the trust property at issue. FNB contends its response is full and complete. Having reviewed the parties' submissions, the Court finds FNB fully and completely responded to Interrogatory No. 10.

Interrogatory No. 11 and FNB's response provide, as follows:

> INTERROGATORY NO. 11: Identify how FNB's policies and procedures related to the use of brokerage accounts as collateral were applied to this Loan and Collateral, including the name and title of each person who would have had a role in evaluating the brokerage accounts at issue.

> RESPONSE TO INTERROGATORY NO. 11: Mel Martin determined the proper name of the accounts holding the Collateral. Mel Martin reviewed account statements to determine asset values of the Collateral. Mel Martin spoke with the proper parties at BAIS to determine if BAIS would agree to sign the appropriate pledge and control agreement. Mel Martin delivered the appropriate pledge and control agreement to BAIS for execution.

Defendants assert FNB failed to identify any policy or procedure of FNB, failed to identify what procedure it applied determining the use of brokerage accounts as collateral, and failed to identify each person who had a role in evaluating the brokerage accounts at issue. FNB contends that its response is full and complete. Having reviewed the parties' submissions, the Court finds FNB fully and completely responded to Interrogatory No. 11.

Interrogatory No. 12 and FNB's response provide, as follows:

> INTERROGATORY NO. 12: Identify how FNB's policies and procedures regarding attachments were applied to this Loan and Collateral.

> RESPONSE TO INTERROGATORY NO. 12: Objection. The term "attachment" is not a defined term. In addition Defendant's

Interrogatory No. 12 seeks a legal opinion from the person responding to these Interrogatories regarding the term "attachment".

Defendants assert that FNB's objection is without merit. Specifically, defendants assert that Mel Martin, the person responding to the interrogatories on behalf of FNB, is the President of FNB, was a former National Bank Examiner, and has 24 years of experience in commercial lending and investment banking and that it is inconceivable that Mr. Martin does not understand the term "attachment." FNB contends that the term "attachment" is not a defined term and FNB should not be required to look beyond the question asked and guess at the meaning of the term "attachment." Having carefully reviewed the parties' submissions, the Court finds that the term "attachment" is a term that would be commonly understood in the banking industry and that Mr. Martin clearly would understand what that term means. Accordingly, the Court finds that FNB should be compelled to respond to Interrogatory No. 12.

      3.      Interrogatory No. 5

Interrogatory No. 5 and FNB's response provide, as follows:

INTERROGATORY NO. 5: Identify all Communications between FNB and BAISI relating to the Collateral by identifying the person or persons involved in the Communication; the date such Communication occurred; and the content of such Communication.

RESPONSE TO INTERROGATORY NO. 5: The Communications with Banc of America Investment Services, Inc. initially occurred with Stephen Bennett. The Communication occurred prior to the Closing of the Loan and subsequent to the closing of the Loan. During the Communications, the parties discussed the Trust Agreement of the Parrish GST Exempt Residuary Trust and the Trust Agreement for the Peggy Joyce Parrish Trust, the Collateral and other assets pledged as collateral, and Banc of America Investment Services, Inc.'s willingness to enter into a third party pledge agreement governing the Collateral and other assets pledged to as collateral. In December 2008, Communications occurred with Janell Walker. During the Communications with Janell Walker, the parties

discussed the status of the Collateral, the location of the Collateral
and the release of the Collateral by Banc of America Investment
Services, Inc. in violation of the Notice of Pledge and Control
Agreements governing the Collateral.

Defendants assert that FNB's response is incomplete in that FNB failed to identify who
communicated with Stephen Bennett, the topic of the communication, and when the
communication(s) occurred.  FNB contends that its response is a full, complete, unevasive response.
Having reviewed the parties' submissions, the Court finds that FNB's response in incomplete with
respect to identifying who communicated with Stephen Bennett and Janell Walker but that in all
other respects FNB's response is complete.  Accordingly, the Court finds that FNB should be
compelled to identify who communicated with Stephen Bennett and Janell Walker.

C.    Requests for production

1.    Request for production nos. 1, 2, 10, and 12

Request for Production No. 1 and FNB's response provide, as follows:

REQUEST FOR PRODUCTION NO. 1: Produce all documents
relating to the Loan, including but not limited to all loan files,
applications, agreements, financial materials, guaranties, security
agreements, control agreements, loan memoranda, credit request
and/or approval forms.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1: Objection.
Defendant's Request for Production No. 1 is overly broad and unduly
burdensome.   Defendant's Request for Production No. 1 seeks
financial information of third parties which is subject to protection
under the Oklahoma Financial Privacy Act, Okla. Stat. tit. 6, §2201
*et seq.*  Defendant's Request for Production No. 1 seeks information
which is not relevant nor will it lead to the discovery of admissible
evidence.   Defendant's Request for Production No. 1 seeks
confidential trade secrets and/or confidential commercial information
or processes.

Defendants assert that FNB has failed to provide any reasonable grounds for its objection that this request for production is overly broad and failed to support its objection that the documents sought contain confidential trade secrets and confidential commercial information or processes. Defendants further assert that the documents sought through this request are relevant to support their affirmative defenses.  Defendants finally assert that the Oklahoma Financial Privacy Act does not apply to this discovery request.

The Oklahoma Financial Privacy Act provides, in pertinent part:

> A financial institution is prohibited from giving, releasing or disclosing any financial record to any government authority unless:
> (a) it has written consent from the customer for the specific record requested; or
> (b) it has been served with a subpoena issued pursuant to Section 4 for the specific record requested.

Okla. Stat. tit. 6, § 2203 (emphasis added).  Further, the Oklahoma Financial Privacy Act defines "government authority" as "any agency, board, commission or department of the State of Oklahoma, or any officer, employee, representative or agent thereof."  Okla. Stat. tit. 6, § 2202(c).  Because defendants do not fall within the definition of "government authority," the Court finds that the Oklahoma Financial Privacy Act is inapplicable to the discovery requests at issue.  However, due to the sensitive and private nature of the financial records sought, the Court does find that a protective order should be entered to secure the privacy of FNB's customers' information.[1]

FNB contends that this request for production is overly broad, unduly burdensome, and seeks information which is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Having carefully reviewed the parties' submissions, the Court finds that this request for

---

[1]Based upon the parties' submissions, the Court believes the parties will be able to work together and agree on the terms for such a protective order.

13

production is overly broad and should be limited to all documents relating to the use of trust property as collateral for the Loan and the actual approval of the Loan. The Court further finds that, as limited, this request seeks information which is relevant and/or is reasonably calculated to lead to the discovery of admissible evidence.

Finally, regarding FNB's objection that this request for production seeks confidential trade secrets and/or confidential commercial information or processes, the Tenth Circuit has held:

> [t]here is no absolute privilege for trade secrets and similar confidential information. To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.

*Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325-26 (10th Cir. 1981) (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, the Court finds that FNB has not established that the information sought through this request for production is, in fact, a trade secret and/or confidential commercial information or processes. FNB merely makes the conclusory statement that the documents sought are privileged trade secrets and confidential commercial information and provides no additional information which would establish that the documents are, in fact, trade secrets and confidential commercial information. Further, the Court finds that even if the documents are privileged trade secrets and confidential commercial information, defendants'

14

need for such documents to support their affirmative defenses outweighs any injury which could result from the disclosure of this information.

Accordingly, the Court finds that FNB should be compelled to respond to Request for Production No. 1, as limited by the Court as set forth above.

Request for Production No. 2 and FNB's response provide, as follows:

> REQUEST FOR PRODUCTION NO. 2: Produce all documents relating to FNB's decision to accept the Collateral as security for the Loan, including but not limited to any meeting agendas or minutes where the Loan and Collateral were discussed, any electronic communications relating to the Loan and Collateral, and any internal memoranda of any kind relating to the Loan and Collateral.

> RESPONSE TO REQUEST FOR PRODUCTION NO. 2: Objection. Defendant's Request for Production No. 2 is overly broad and unduly burdensome. Defendant's Request for Production No. 2 seeks confidential trade secrets and/or confidential commercial information or processes. Defendant's Request for Production No. 2 seeks financial information of third parties which is subject to protection under the Oklahoma Financial Privacy Act, Okla. Stat. tit. 6, §2201 *et seq.* Defendant's Request for Production No. 2 seeks information which is not relevant nor will it lead to the discovery of admissible evidence.

As set forth above, the Court finds that the Oklahoma Financial Privacy Act is inapplicable to the discovery requests at issue. Further, the Court finds that this request for production is not overly broad and that FNB has not shown how it would be unduly burdensome to respond to said request. Additionally, the Court finds that Request for Production No. 2 seeks information which is relevant to defendants' affirmative defenses and/or is reasonably calculated to lead to the discovery of admissible evidence regarding defendants' affirmative defenses. Finally, having carefully reviewed the parties' submissions, the Court finds that FNB has not established that the information sought through this request for production is, in fact, a trade secret and/or confidential

commercial information or processes. FNB merely makes the conclusory statement that the documents sought are privileged trade secrets and confidential commercial information and provides no additional information which would establish that the documents are, in fact, trade secrets and confidential commercial information. Further, the Court finds that even if the documents are privileged trade secrets and confidential commercial information, defendants' need for such documents to support their affirmative defenses outweighs any injury which could result from the disclosure of this information.

Accordingly, the Court finds that FNB should be compelled to respond to Request for Production No. 2.

Request for Production No. 10 and FNB's response provide, as follows:

> REQUEST FOR PRODUCTION NO. 10: Produce all documents relating to the Trusts.
>
> RESPONSE TO REQUEST FOR PRODUCTION NO. 10: Objection. Defendant's Request for Production No. 10 is overly broad and unduly burdensome. Defendant's Request for Production No. 10 seeks financial information of third parties which is subject to protection under the Oklahoma Financial Privacy Act, Okla. Stat. tit. 6, §2201 *et seq.* Defendant's Request for Production No. 10 seeks information which is not relevant nor will it lead to the discovery of admissible evidence.

Once again, as set forth above, the Court finds that the Oklahoma Financial Privacy Act is inapplicable. Further, the Court finds that this request for production is not overly broad and that FNB has not shown how it would be unduly burdensome to respond to said request. Additionally, the Court finds that Request for Production No. 3 seeks information which is relevant to defendants' affirmative defenses and/or is reasonably calculated to lead to the discovery of admissible evidence

regarding defendants' affirmative defenses. Accordingly, the Court finds that FNB should be compelled to respond to Request for Production No. 10.

Request for Production No. 12 and FNB's response provide, as follows:

> REQUEST FOR PRODUCTION NO. 12: Produce all documents relating to FNB's attempts to secure any other collateral used to secure the Loan.

> RESPONSE TO REQUEST FOR PRODUCTION NO. 12: Objection. Defendant's Request for Production No. 12 is overly broad and unduly burdensome. Defendant's Request for Production No. 12 seeks financial information of third parties which is subject to protection under the Oklahoma Financial Privacy Act, Okla. Stat. tit. 6, §2201 *et seq.* Defendant's Request for Production No. 12 seeks information which is not relevant nor will it lead to the discovery of admissible evidence.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production No. 12 seeks information which is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Court finds that FNB should not be compelled to respond to Request for Production No. 12.

2.    <u>Request for production nos. 3 and 11</u>

Request for Production No. 3 and FNB's response provide, as follows:

> REQUEST FOR PRODUCTION NO. 3: Produce all of FNB's policies and procedures on secured lending in force at any time during the life of the Loan, including any training materials or other documents relating to those policies and procedures.

> RESPONSE TO REQUEST FOR PRODUCTION NO. 3: Objection. Defendant's Request for Production No. 3 is overly broad and unduly burdensome. Defendant's Request for Production No. 3 seeks confidential trade secrets and/or confidential commercial information or processes. Defendant's Request for Production No. 3 seeks information which is not relevant nor will it lead to the discovery of admissible evidence.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production No. 3 is overly broad and should be limited to all of FNB's policies and procedures relating to the use of trust assets as collateral and the approval of loans.  The Court further finds that, as limited, this request seeks information which is relevant and/or is reasonably calculated to lead to the discovery of admissible evidence.  Additionally, the Court finds that FNB has not established that the information sought through this request for production is, in fact, a trade secret and/or confidential commercial information.  FNB merely makes the conclusory statement that the documents sought are privileged trade secrets and confidential commercial information and provides no additional information which would establish that the documents are, in fact, trade secrets and confidential commercial information.  Further, the Court finds that even if the documents are privileged trade secrets and confidential commercial information, defendants' need for such documents to support their affirmative defenses outweighs any injury which could result from the disclosure of this information.

Accordingly, the Court finds that FNB should be compelled to respond to Request for Production No. 3, as limited by the Court as set forth above.

Request for Production No. 11 and FNB's response provide, as follows:

> REQUEST FOR PRODUCTION NO. 11: Produce all of FNB's policies and procedures used for determining whether collateral offered to secure a loan would be acceptable.

> RESPONSE TO REQUEST FOR PRODUCTION NO. 11: Objection.  Defendant's Request for Production No. 11 is overly broad and unduly burdensome.  Defendant's Request for Production No. 11 seeks information which is not relevant nor will it lead to the discovery of admissible evidence.  Defendant's Request for Production No. 11 seeks confidential trade secrets and/or confidential commercial information or processes.

Having reviewed the parties' submissions, the Court finds that this request for production is not overly broad and that FNB has not shown how it would be unduly burdensome to respond to said request.  Additionally, the Court finds that Request for Production No. 11 seeks information which is relevant to defendants' affirmative defenses and/or is reasonably calculated to lead to the discovery of admissible evidence regarding defendants' affirmative defenses.  Finally, having carefully reviewed the parties' submissions, the Court finds that FNB has not established that the information sought through this request for production is, in fact, a trade secret and/or confidential commercial information or processes.  FNB merely makes the conclusory statement that the documents sought are privileged trade secrets and confidential commercial information and provides no additional information which would establish that the documents are, in fact, trade secrets and confidential commercial information.  Further, the Court finds that even if the documents are privileged trade secrets and confidential commercial information, defendants' need for such documents to support their affirmative defenses outweighs any injury which could result from the disclosure of this information.

Accordingly, the Court finds that FNB should be compelled to respond to Request for Production No. 11.

3.      Request for production nos. 4, 5, and 6

FNB moves the Court for a protective order prohibiting the discovery sought through Request for Production Nos. 4, 5, and 6.  Specifically, FNB asserts that the documents sought under these requests are outside the scope of discovery and are privileged trade secrets and commercial information.  Request for Production Nos. 4, 5, and 6 provide:

> REQUEST FOR PRODUCTION NO. 4: Produce all of FNB's
> policies and procedures on the use of trust properties as collateral in

19

force at any time during the life of the Loan, including any training materials or other documents relating to those policies and procedures.

REQUEST FOR PRODUCTION NO. 5: Produce all of FNB's policies and procedures on the use of brokerage accounts, including those owned by trust, as collateral in force at any time during the life of the Loan, including any training materials or other documents relating to those policies and procedures.

REQUEST FOR PRODUCTION NO. 6: Produce all of FNB's policies and procedures on the term "attachment" under Article 9 of the UCC in force at any time during the life of the Loan, including any training materials or other documents relating to those policies and procedures.

Having carefully reviewed the parties' submissions, the Court finds that these requests seek documents that fall within the scope of discovery. Specifically, the Court finds that the documents sought are relevant to defendants' affirmative defenses and/or is reasonably calculated to lead to the discovery of admissible evidence regarding defendants' affirmative defenses. Additionally, the Court finds that FNB has not established that the documents sought through these requests for production are, in fact, trade secrets and/or confidential commercial information. FNB merely makes the conclusory statement that the documents sought are privileged trade secrets and confidential commercial information and provides no additional information which would establish that the documents are, in fact, trade secrets and confidential commercial information. Accordingly, the Court finds that FNB is not entitled to a protective order with respect to Request for Production Nos. 4, 5, and 6.

D.    Subpoenas duces tecum

Defendants have served two subpoenas duces tecum on FNB and have provided notice of these subpoenas to the Parrishs. From a review of the parties' submissions and the subpoenas

themselves, the Court finds that the second, revised subpoena duces tecum, which was served on

July 27, 2009, was meant to supersede the first subpoena duces tecum.  Accordingly, the Court finds

that the motions regarding the first subpoena duces tecum – the Objection of Non-Parties Tom and

Ashley Parrish to Subpoena Duces Tecum and Motion to Quash [docket no. 36] and plaintiff's

Motion to Quash Defendants' Subpoena Duces Tecum [docket no. 37] – are now moot.

Defendants' second, revised subpoena duces tecum requests the following documents:

1. The loan file of Ashley D. Parrish and Thomas W. Parrish relating to Promissory Note No. 93018****, specifically:

   a. all documents reflecting the financial position of Ashley D. Parrish and Thomas W. Parrish which FNB obtained in order to make its determination whether to make a personal loan to Ashley D. Parrish and Thomas D. Parrish;

   b. a list of all collateral pledged by Ashley D. Parrish and Thomas W. Parrish for repayment of Promissory Note No. 93018****, including any documents reflecting the cross-collateralization of such collateral for other loans;

   c. all loan agreements reflecting the pledge of collateral that was also pledged by Ashley D Parrish and Thomas W. Parrish for repayment of Promissory Note No. 93018****;

   d. all communications between FNB and Ashley D. Parrish and Thomas W. Parrish relating to the loan which is reflected in Promissory Note No. 93018****; and

   e. all internal communications of FNB employees, officers, directors, or agents relating to the loan made to Ashley D. Parrish and Thomas W. Parrish which is reflected in Promissory Note No. 93018****.

Exhibit A to Subpoena Duces Tecum served on July 27, 2009.

FNB contends the July 27, 2009 subpoena should be quashed because it seeks the production

of (1) documents in a time period of less than the 30 day time period given a party under Federal

Rule of Civil Procedure 34; (2) FNB's trade secrets and confidential commercial information; (3)

21

information which is overly broad and not reasonably calculated to lead to the discovery of information relevant to the claims or defenses asserted by the parties.  The Parrishs contend the July 27, 2009 subpoena should be quashed because it seeks to obtain irrelevant, private and confidential financial records of non-parties the Parrishs.

FNB asserts that the July 27, 2009 subpoena seeks to circumvent the 30-day time period set forth in Rule 34 for the production of documents by seeking production of the documents requested in the subpoena on a date less that 30 days from the date of service.  Defendants contend that they did not intend to usurp the discovery rules when they issued the subpoena and that they were attempting to uphold an agreement between counsel for the parties relating to the issuance of the subpoena.  Having carefully reviewed the parties' submissions, the Court finds that the July 27, 2009 subpoena should not be quashed based upon the time period set forth for the production of the documents requested.  The Court would note, however, that in responding to the subpoena, FNB shall be given the 30-day period set forth in Rule 34 to respond.

Once again, FNB asserts that the documents sought are its trade secrets and confidential commercial information.  FNB, however, only makes conclusory statements regarding these documents and provides no additional information which would establish that the documents are trade secrets and confidential commercial information.  Because FNB has not established that the documents sought through the subpoena are trade secrets and/or confidential commercial information, the Court finds that the July 27, 2009 subpoena should not be quashed on this basis.

Additionally, the Parrishs and FNB assert that the July 27, 2009 subpoena seeks documents which are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Having carefully reviewed the July 27, 2009 subpoena, and the parties and non-parties' submissions,

the Court finds that the subpoena seeks information which is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  As set forth above, the Court finds that only those portions of the loan file at issue and those communications regarding the use of trust property as collateral for the Loan and the actual approval of the Loan are relevant and/or reasonably calculated to lead to the discovery of admissible evidence.

Specifically, the Court finds that the documents requested in items "a, b, and c" are not relevant nor reasonably calculated to lead to the discovery of admissible evidence and that this part of the subpoena should be quashed.  Further, the Court finds that items "d and e" are overly broad and should be narrowed to only include communications relating to the use of trust property as collateral for the Loan and the actual approval of the Loan.  Finally, the Court would note that it recognizes the sensitive and private nature of the records sought and, as set forth above, finds that a protective order should be entered to secure the privacy of the Parrishs' information.

E.     Second amended notice of deposition

The examination topics at issue are the following:

A.   Each factual bases, legal bases, evidence and circumstances relating to the approval of the Loan made by You to Thomas W. Parrish and Ashley D. Parrish, including but not limited to:

1.   any documents or communications between You and Your directors, officers, agents, attorneys, advisors and employees reflecting any meetings, discussions, or communications Relating To the Loan.

2.   any documents or communications Relating To underwriting or other analysis or consideration of the Loan.

3.   any documents or communications of You or Your Board of Directors Relating To the Loan.

4.  any documents or communications of You or any of Your loan approval committee or other groups of Your employees Relating To the Loan.

5.  any concerns of Your officers, directors, agents, attorneys, advisors, or employees Relating To the Loan.

6.  any concerns of Your officers, directors, agents, attorneys, advisors, or employees Relating To the Trusts being used as collateral for the Loan.

7.  The identity of Persons and Entities which had primary responsibility for documenting the Loan.

8.  The identity of Persons and Entities which had primary responsibility for assuring that the security interest Relating To the Loan has attached.

9.  The identity of Persons and Entities which had primary responsibility for assuring that the security interest Relating To the Loan was perfected.

10.  The identity of Persons and Entities which had primary responsibility for underwriting Relating To the Loan.

11.  The identity of Persons and Entities which had primary responsibility for approval Relating To the Loan.

12.  The identity of Persons and Entities which had primary responsibility for Loan documentation Relating To the Loan.

23.  The identity of Persons and Entities which had any Communication with Thomas W. Parrish Relating To the Loan.

24.  The identity of Persons and Entities which had any Communication with Ashley D. Parrish Relating To the Loan.

25.  The identity of Persons and Entities which had any Communication with the Peggy Joyce Parrish Trust Relating To the Loan.

26.  The identity of Persons and Entities which had any Communication with the Parrish GST Residuary Trust Relating To the Loan.

B.  All Documents, materials and records Relating To Your education and training of employees, officers, and directors on the topic of secured lending, and specifically including the attachment and perfection of security interests in trust assets from January 1, 2006 to the present.

C.  Your policies and procedures Relating To secured loans in effect at any time during the period January 1, 2006 through the present.

D.  Your policies and procedures Relating To personal loans made to Your officers, directors, employees, agents, attorneys or advisors in effect during the time period of January 1, 2006 through the present.

E.  Your electronic records relating to each topic described within this Notice.

F.  Any and all Documents You maintain Relating To the Loan, Trusts, and the Notice of Pledge and Control Agreements.

H.  Your e-mail system from 2006 to present, including but not limited to active, backed-up, and archived programs, accounts, unified messaging, server-based e-mail, web-based e-mail, dial-up e-mail, user names and addresses, domain names and addresses, e-mail messages, attachments, manual and automated mailing lists and mailing list addresses, and the identity of Person(s) responsible for Support of Your e-mail system.

I.  The manner in which You archived Your Documents and Data from 2006 to the present, including but not limited to: a) the method(s) used, including the name(s) of the backup Software and version number(s); b) the criteria by which Documents and Data are stored; c) the location(s) of stored Documents and Data; d) Document and Data backup schedule; e) whether the backups are full or incremental; f) the location and number of backup tapes in storage; g) the Rotation schedule of backup tapes; h) the storage period for the archived electronic Documents and Data; and i) the identity of the Entity or Person(s) responsible for backups and retention/storage of the archived Documents and Data.

J.  The identity of Persons and Entities which had primary responsibility for Your Computer system from 2006 to the present, including but not limited to: a) the Person(s) in Your Information Technology (IT) and/or Information Services (IS) sections; (b) any consultants employed by You with respect to the Plaintiff's Computer

system; and (c) the Persons and/or Entities who Supported the various Computer Networks utilized by You.

K. The voicemail system that You utilized from 2006 to the present, including but not limited to: a) a description of the voicemail system; b) the identity of the hardware and software comprising the voicemail system; c) the policies and procedures regarding the storage of voicemail messages; d) archival options and media rotation schedule; and e) the identity of the Person(s) and Entity(ies) that Supported the voicemail system.

L. Policies for the retention and destruction of Documents and Data for the time period of 2006 to present, including but not limited to: a) a description of such policies and practices; and b) the identity of the Person(s) and Entity(ies) who had primary responsibility for the enforcement of such policies and/or practices.

FNB contends examination topics (A)(1)-(5), (7)-(12), (23)-(26), B-F and H-L seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Having carefully reviewed the parties' submissions, the Court finds that topics (A)(1)-(5), (23), (24), and (F), as written, encompass information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Court finds that FNB is entitled to a protective order limiting these topics to only that information requested relating to the use of trust property as collateral for the Loan, the actual approval of the Loan, and the Notice of Pledge and Control Agreements. The Court further finds that topics (A)(7)-(12), (25), (26), D, and E seek information which is relevant and/or reasonably calculated to lead to the discovery of admissible evidence. Additionally, the Court finds that topics B and C, as written, seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and that FNB is entitled to a protective order limiting these topics to only that information requested relating to the use of trust assets as collateral, the approval of loans, and the attachment and perfection of security interests in trust assets. Finally, the Court finds that topics H-

L seek information which is neither relevant nor reasonable calculated to lead to the discovery of admissible evidence and that FNB is entitled to a protective order prohibiting the discovery of this information.

FNB further contends examination topics (A)(7)-(12) and B-E seek information which is privileged trade secrets and confidential commercial information.  Having carefully reviewed the parties' submissions, the Court finds that FNB has not established that the information sought through these examination topics is, in fact, a trade secret and/or confidential commercial information.  FNB merely makes the conclusory statement that the information sought is privileged trade secrets and confidential commercial information and provides no additional information which would establish that the information is, in fact, trade secrets and confidential commercial information.  Further, the Court finds that even if the information is privileged trade secrets and confidential commercial information, defendants' need for such information to support their affirmative defenses outweighs any injury which could result from the disclosure of this information.

Finally, FNB contends that the information sought in examination topics (A)(1), (5), (6), and D falls within the attorney/client privilege.  Having carefully reviewed the parties' submissions, the Court finds that topics (A)(1), (5) and (6) could encompass information which is subject to the attorney/client privilege, specifically conversations FNB had with its attorneys relating to the Loan.  Accordingly, the Court finds that FNB is entitled to a protective order limiting these topics to only that information which does not invade the attorney/client privilege.  In relation to topic D, the Court finds the information sought through this topic does not fall within the attorney/client privilege.

III.    Conclusion

Accordingly, for the reasons set forth above, the Court:

(A)     GRANTS IN PART and DENIES IN PART defendants' Motion to Compel
        Responses to Discovery Requests [docket no. 31] as follows:

        (1)     The Court GRANTS the motion to compel as to Interrogatory Nos. 1 and 5,
                as limited by the Court, Interrogatory Nos. 2 and 12, Request for Production
                Nos. 1 and 3, as limited by the Court, and Request for Production Nos. 2, 10,
                and 11;

        (2)     The Court DENIES the motion to compel as to Request for Admission Nos.
                1 and 3, Interrogatory Nos. 3, 8, 9, 10, and 11, and Request for Production
                No. 12;

(B)     DENIES AS MOOT the Objection of Non-Parties Tom and Ashley Parrish to
        Subpoena Duces Tecum and Motion to Quash [docket no. 36];

(C)     SUSTAINS the Objection of Non-Parties Tom and Ashley Parrish to Defendants'
        Second Subpoena and Motion to Quash [docket no. 51] as follows: Items a, b, and
        c are hereby quashed and items d and e are limited as set forth above;

(D)     GRANTS IN PART and DENIES IN PART plaintiff's Combined Motion to Quash
        Defendants' Subpoena Duces Tecum and Second Amended Notice of Deposition and
        Motion for Protective Order [docket no. 37] as follows:

        (1)     The Court DENIES AS MOOT plaintiff's motion to quash defendants'
                subpoena duces tecum;

        (2)     The Court DENIES plaintiff's motion for protective order as to Request for
                Production Nos. 1, 2, 3, 4, 5, 6, and 11;

        (3)     The Court GRANTS plaintiff's motion for protective order as to Request for
                Production No. 12;

        (4)     The Court GRANTS plaintiff's motion to quash second amended notice of
                deposition as follows: examination topics (A)(1)-(6), (23), (24), B, C, and F
                shall be limited as set forth above and inquiry as to examination topics H-L
                shall be prohibited;

        (5)     The Court DENIES plaintiff's motion to quash second amended notice of
                deposition as to examination topics (A)(7)-(12), (25), (26), D, and E; and

(E)     GRANTS plaintiff's Combined Motion to Quash Defendants Subpoena Duces Tecum Served on July 27, 2009 and Motion for Protective Order [docket no. 47] as follows: Items a, b, and c are hereby quashed and items d and e are limited as set forth above.

**IT IS SO ORDERED this 15th day of September, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE